People ex rel. Sandra Ellen Potter, by June A. Potter, her Mother, Petitioner-Appellant, v. Samuel Potter and Mary Hayden, Respondents-Appellees.

Gen. No. 10,747.

Opinion filed May 17, 1954. Rehearing denied June 15, 1954. Released for publication June 15, 1954.

WILSON, WILSON & RAINEY, of Princeton, for appellant.

JOSEF T. SKINNER, and GEORGE S. SKINNER, both of Princeton for appellees.

MR. JUSTICE WOLFE delivered the opinion of the court.

Samuel Potter and June A. Potter, husband and wife, together with their infant daughter, Sandra Ellen Potter, resided in the State of Ohio. On February 27, 1952, Samuel Potter went to a lawyer in Middletown,

Ohio, and employed him to file a suit for a divorce against his wife, June A. Potter. The record shows the lawyer's name was Harry D. Becker of Dayton, Ohio and that Potter paid him the sum of $350 to start the suit. A complaint for divorce was prepared and it was sworn to by Samuel James Potter on February 27, 1952.

In his complaint for a divorce, after the allegations of the marriage, etc., it then follows: "The defendant has, in total disregard of her marital duties and in violation of her vows, been guilty of extreme cruelty towards this plaintiff by running around with a man, other than her husband, and whose name will be divulged at the time of the trial, against the wishes of this plaintiff, causing said plaintiff much embarrassment because their friends had knowledge of this dereliction of duty. Further, plaintiff states that said defendant argued constantly with this plaintiff, assaulted him and has placed him in a highly nervous condition.

"Plaintiff avers that the defendant has been guilty of gross neglect of duty toward him, their home and their said child; that she was a very poor housekeeper and neglectful wife; that he was forced to limit charge accounts because of her dissipations; that she ran through their savings and has forced him into debt; that she has refused on many occasions to change the baby from the time plaintiff left until his return home to change said child; that she did not feed the child properly, and beat said child frequently.

"WHEREFORE, Plaintiff prays that he may be divorced from the said defendant, that he be granted the care, custody and control of said child, and such other and further relief to which he may be entitled, either in law or in equity."

The suit was filed on March 6, 1952, and summons issued, and June Allen Potter is alleged to be a minor and living at the home of one Margaret Hovel. Sum-

mons was served and returned on March 7, 1952. On June 16, 1952, June Allen Potter, by her guardian *ad litem,* filed her answer to the plaintiff's complaint in which she denied any misconduct on her part and filed a cross-petition in which she alleged neglect and desertion by the plaintiff, and in her petition she asked for the care and custody of their minor child, Sandra Ellen Potter.

A hearing was had upon the original complaint and cross-complaint for a divorce and on July 20, 1953, the court entered the following decree: "This day this cause came to be heard upon the petition of the plaintiff, the answer of the guardian ad litem appointed for said defendant, being a minor over the age of 14 years, the answer and cross petition of the defendant, and the evidence adduced in support thereof, this cause having been regularly assigned for trial. The court finds that service of summons has been made upon the defendant upon the plaintiff's petition and upon the plaintiff upon the cross petition and does hereby approve and confirm the same.

"The Court further finds that at the time of the trial the plaintiff failed to appear to offer evidence in support of his petition and the court therefore dismisses said petition. The court further finds that the allegations of the answer and cross petition are true.

"Upon consideration whereof, the court finds that the defendant at the time of the filing of her cross petition had been a resident of the State of Ohio for more than the year last past and that she was at said time a bona fide resident of the County of Butler, having resided continuously therein for over the past ninety (90) days. That the parties intermarried on 11th August, 1950 at Jeffersonville, Indiana and that one child, Sandra Ellen, age 2 years was born of said marriage.

"The Court finds that the plaintiff has been guilty of gross neglect of duty towards the defendant, as is al-

leged in the cross petition, and the defendant is entitled to the relief prayed for.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the marital relations heretofore existing between the parties be and the same are hereby dissolved and both parties released from all obligations of the same; that the defendant be and she is hereby granted an absolute divorce from the plaintiff.

"And the Court coming now to the matter of custody of the minor child, hereby awards the custody of the same to the defendant and orders that the plaintiff return the custody and control of the child to the defendant forthwith. It is also ordered by the Court that the plaintiff shall pay to the defendant for the support of the minor child the sum of $10.00 a week, the first payment due on Saturday, July 25th, 1953 and a like sum each and every Saturday thereafter until the further order of the Court." The record shows that notice of the hearing was served on the plaintiff's attorney, Harry D. Becker of Dayton, Ohio.

On August 1, 1953, the *People ex rel. Sandra Ellen Potter, by June A. Potter, her mother,* filed a petition for habeas corpus in the circuit court of Bureau county, Illinois, for the possession of Sandra Ellen Potter and alleged that Samuel Potter and Mary Hayden were illegally holding the possession of said child. With her complaint she filed a certified copy of the divorce proceedings in Ohio. A hearing was had on this petition and the court denied the writ and granted the possession of the child to Samuel Potter, her father. An appeal has been perfected to this court from that order.

It is claimed by the appellee that the divorce decree in Ohio was illegal and void because he did not have notice of the filing of the cross-complaint, and the court did not have jurisdiction, so as to render a decree in regard to the custody of the minor child. The court heard evidence over the objection of the petitioner in

regard to the conduct and care that the mother had given the child while the parents were living together in Ohio. The respondent, Samuel Potter, invoked the jurisdiction of the court of common pleas of Butler county, when he filed his petition for a divorce, and swore that he was a resident of that county, and he asks that the court adjudicate to him the possession and custody of their minor child. To this complaint the wife filed her answer and cross-complaint asking for the possession of the child. Under these conditions the Ohio court had jurisdiction of all the parties, and the subject matter of the suit. The respondent, Potter, in his testimony seems to intimate that he did not know that the attorney was going to file the suit, but the record disputes this idea because it hardly seems reasonable that a man would go to an attorney and pay him $350 to start the suit for him, prepare a complaint, then verify it, and in addition to that his testimony shows that when he left Ohio, for Illinois, that he intended to return for the hearing on the divorce proceeding. He so stated in his testimony that he had such an arrangement with his attorney, and nowhere in his testimony does he claim that his attorney was not notified of the hearing of the divorce proceeding, and for the custody of the child.

 Much of the appellee's brief is devoted to the subject that in the hearing between the parties as to the custody of the child, the best interest for the child is a paramount issue to be decided. No doubt this is a correct statement of the law, but the parties to this suit differ materially when and where that hearing should be held. As before stated in the pleadings in the divorce proceeding both the father and mother asked for the custody of the child. That was an issue squarely presented to the court in Ohio. Unless there was some fraud perpetrated upon the court, the judgment should be given full faith and credit in a court in Illinois. Both

the appellant and appellee have quoted from the case of *People v. Schaedel*, 340 Ill. 560. It is there stated: "The decree rendered was *res judicata* as to the facts which existed at the time it was entered but it was not *res judicata* as to facts and circumstances arising thereafter . . . ."

In the case of *People v. Hickey*, 86 Ill. App. 20, it is stated: "A decree awarding the custody of a child is *res judicata*, concluding the question. But it does not conclude the question for all time, since new facts may create new issues."

In the case of *Nelson v. Sutton*, 232 Ill. App. 93, this court had a similar question, and we held that under the law of Illinois there is a strong presumption that the judgment of a foreign State is valid. "Where a judgment has been rendered by a court of general jurisdiction, there is a strong legal presumption that the court had jurisdiction to render the judgment and that its proceedings conform to the law of the State in which it was rendered. . . . A judgment of a sister State cannot be impeached by establishing irregularities in the form of the proceedings, or upon the ground that the decision is erroneous. . . . If this judgment was valid and binding under the laws of South Dakota, then it was binding on the courts of Illinois, and it is immaterial what may be the holding of courts of other States upon the question involved in the case. If the judgment was valid in South Dakota, then it would be sufficient to form the basis of the suit in Illinois and the trial court was in error in holding to the contrary." *Borman v. Borman*, 291 Ill. App. 135.

As before stated, the court heard evidence over the objection of the petitioner relative to the conduct of Mrs. Potter prior to the time the divorce was granted. It is held in *Thomas v. Thomas*, 233 Ill. App. 488. "A decree fixing the custody of a child is final on the conditions then existing and should not be changed

afterwards unless on altered conditions or material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child."

In *Harms v. Harms,* 323 Ill. App. 154, it is there stated: "Court would not be justified in altering an original divorce decree as to custody of children unless there was change in conditions affecting welfare of children after entry of decree, or unless facts and circumstances which should have been called to the attention of the court at time decree was entered, were overlooked."

In this case there was no contention that any circumstances were overlooked by the trial court that should have been called to his attention, because the court finds in the decree that the plaintiff failed to prosecute his suit and that the mother was a proper person to have the custody of the child, nor could it be said that there were any changed circumstances in the status of the wife or child after the decree was signed, until the time of the hearing, because the petition for habeas corpus was filed within ten days after the divorce decree was signed.

It is held in the case of *People v. Wait,* 243 Ill. App. 367. "A foreign decree of divorce cannot be collaterally attacked in a habeas corpus proceeding for the custody of a child provided for in the divorce decree, by attempting to show the decree was void because the facts were not properly presented at the divorce trial."

It was the duty of the plaintiff after he filed his complaint for a divorce to keep in contact with his attorney to be advised in all proceedings affecting the same. It is stated in *Northern Trust Co. v. Sanford,* 308 Ill. 381. "An original bill and cross-bill constitute but one suit, as a cross-bill is a mere adjunct to the original bill, and the statute does not require any proc-

ess thereunder to issue against any parties to the original bill. (*Fleece vs. Russell,* 13 Ill. 31.)"

In *Forrest v. Fey,* 218 Ill. 165, a similar question was presented to the Supreme Court and in passing upon it the court uses this language: "One of the grounds upon which it is contended that the decree of divorce was void is, that Frederick Fey had no legal ground for a divorce and that the decree was obtained by fraudulent averments and proof. Whether he had any legal ground for a divorce, or whether the allegations of his bill of complaint, or the proofs to sustain them, were true or false, does not affect the validity of the decree if the court had jurisdiction to enter it. Where a transcript of a decree entered by a court of another State, duly certified, is offered in evidence in this State, no questions are open to inquiry except questions of jurisdiction, (*McMillan v. Lovejoy,* 115 Ill. 498,) including fraud affecting the jurisdiction or the discretion of the court to exercise such jurisdiction. (*Dunham v. Dunham,* 162 Ill. 589.) After a court has acquired jurisdiction its findings are conclusive in all collateral proceedings, and a decree rendered by the chancery court of Arkansas, if it had jurisdiction, has the same effect in every other State as in the State where it was rendered, and is conclusive on the merits of the controversy, no matter what fraud may have intervened. (*Ambler v. Whipple,* 139 Ill. 311.)"

In the present case the appellee invoked the jurisdiction of the court in Ohio by alleging that he was a resident of that State and filing his divorce complaint. He asks that his wife be made a defendant and that summons be issued for her. She filed her answer and cross-complaint and the court had full jurisdiction of the parties and subject matter of the suit, and rendered a decree granting the wife a divorce and the custody of their minor child. This was binding on the court of Illinois under the full faith and credit provi-

sions of our constitution. If the appellee wanted to question the validity of this divorce decree, he could not do so in the present proceeding. The Ohio court had to decide the question of the fitness of the mother of the child to have her custody, because the appellee in his complaint for a divorce had made serious charges against his wife, and for some reason he did not care to try to prove this before the trial court. There is no evidence that there was any changed condition that would affect the Ohio court's order, in regard to the custody of the child between the time of the signing of the decree and the hearing in the circuit court of Bureau county.

 It is our conclusion that the court should have given full faith and credit to the divorce decree of the State of Ohio, and that he erred in hearing evidence in regard to the wife's conduct prior to the time the decree of divorce was signed, and that he should have held that the petitioner was entitled to the possession of the child, Sandra Ellen Potter. The judgment is therefore reversed and the cause remanded to enter an order not inconsistent with this court's opinion.

*Reversed and remanded.*

MR. JUSTICE ANDERSON took no part in the consideration or determination of this case.