Richard Robert Frank, Plaintiff-Appellant, v. Janice Loretta Frank, Defendant-Appellee.

Gen. No. 47,951.

First District, Second Division.

May 24, 1960.

16

Frankenstein, Lewis, and Feierberg, of Chicago (A. S. Frankenstein, of counsel) for appellant.

Anne Gross Smoller, of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This appeal is from an order transferring custody of a child of divorced parents from the father to the mother.

The parties were married in July, 1955, and were divorced in July, 1958. The decree awarded to the plaintiff father the custody of their only child, a boy born in August, 1956. Following the divorce, defendant was married to the man by whom she was pregnant when divorced. She gave birth to a female child in January, 1959. In May, 1959, she petitioned the chancellor for a modification of the custody order so that she might have custody of the boy. The

decretal order of custody was modified; she was given custody; and this appeal followed.

The question is whether the chancellor abused his discretion in changing the custody order.

Defendant's petition and the answer raised several issues: whether defendant was physically and financially able to care for the child at the time of divorce; whether the child was receiving proper care and treatment under the care of plaintiff and his mother; whether defendant would give the child proper care and treatment; and whether each parent was a fit person. The only finding in the order appealed from after a hearing of testimony is that defendant, the mother, is a "fit and proper person" to have custody of the child.

Plaintiff contends that there was no justification for the change of custody because there was no requisite showing of changed circumstances since the decree, and no proof of conditions then existing but unknown to the chancellor.

This court in Peraza v. Tovar, 13 Ill.App.2d 405, 142 N.E.2d 165, decided there was no merit to the contention that a custody order could be changed "only on a showing of a change of circumstances affecting the child . . . [or] that a change in the condition or situation of the father . . . is not sufficient." The court said its research disclosed that "numerous" decisions were based on change in the condition of a parent. Pgs. 408–09. It affirmed an order taking custody from maternal grandparents and giving it to the father, in the absence of a showing of his unfitness or inability to properly care for the child.

■■ We think Nye v. Nye, 411 Ill. 408, 105 N.E. 2d 300, is authority for deciding many of the questions before us: "The guiding star is and must be, at all times, the best interest of the child"; the mother should not be punished for past misconduct; the di-

vorce decree granting custody is res judicata as to the facts which existed at the time of divorce but may be "changed from time to time as the best interests of the children demand"; new conditions must arise to warrant the change; and it is usual in custody cases "due to the tender years of the child and in consideration of its best interests, to entrust its care and custody to the mother" if a fit person.

■ ■ The record supports the chancellor's finding that the mother here is a fit and proper person. No other finding is made, but implicit in the modification order changing custody from the father to the mother, is a finding that there were changed conditions since the divorce decree, and that in the light of the changed conditions, the best interests of the child were being served in entering the order. It was not necessary that the father be found unfit in order that the modification of the order be justified. Peraza v. Tovar, 13 Ill.App.2d 405, 142 N.E.2d 165.

The chancellor, in the case before us, could find on the evidence that the child, though in custody of a fit father, was in an apartment occupied by his father, his father's grandfather, his father's mother and father, and his father's twenty-eight year old unmarried sister and twelve year old brother; that the child's grandmother and aunt took care of him while the father worked daily from 7:00 a.m. until 2:00 p.m.; and that this environment and this divided care could adversely affect the child's welfare.

He could also find that when the divorce decree was entered the mother did not want to give up the child but did so because it seemed the prudent thing under her circumstances; that she has shown continuing concern over his welfare by visiting him twice weekly since the decree and taking him to the doctor monthly; that she anticipated regaining custody and filed her petition for modification in a timely fashion;

and that the child's mother and her present husband have a small home where only she, her husband, the boy and an infant girl will live, and where she alone will care for him.

The attitude of the mother in Wade v. Wade, 345 Ill. App. 170, 102 N.E.2d 356, is distinguishable from that of the mother here. There is no question of punishing the father here as the mother was punished in Thomas v. Thomas, 223 Ill. App. 488, or rewarding the mother. And there is more here to justify the decree than a mere change in the mother's condition so as to distinguish Maupin v. Maupin, 339 Ill. App. 484, 90 N.E.2d 234. Each case stands on its own facts. Nye v. Nye, 343 Ill. App. 477, 483, aff'd, 411 Ill. 408.

■ No issue was raised in the briefs with respect to the question of the child's religious upbringing. In view of the fact, however, that the State has a special concern in custody cases, we shall discuss the point briefly. Plaintiff and his family are Catholics and the boy was to be brought up a Catholic. The child's mother was a Catholic but because her present husband is a Protestant, she attends a Protestant Church. The child's mother and her present husband agree that the boy will be brought up in the Catholic faith.

■ In an adoption case the Supreme Court said that in exercising discretion about adoption, "identity of religion . . . is a significant and desirable but not exclusive factor" in discerning the best interest of the child. Cooper v. Hinrichs, 10 Ill.2d 269, 140 N.E.2d 293. The same rule prevails in domestic relation cases. Note, 33 Notre Dame Lawyer 453–62 (1958). This court in circumstances similar to those before us took that view. Smith v. Smith, 340 Ill. App. 636, 92 N.E. 2d 358. We can not say that the chancellor abused his discretion in not giving the question of religion greater weight in this case.

The chancellor observed the witnesses, "their candor and their demeanor which together with their testimony throws light upon the welfare" of the child. Dunning v. Dunning, 14 Ill.App.2d 242, 144 N.E.2d 535.

█ We have considered all the points raised in plaintiff's brief and conclude that the chancellor did not abuse his discretion in modifying the decretal order of custody.

The order is affirmed.

Affirmed.

MURPHY, P. J., concurs.

BURMAN, J., dissenting:

Ten months after a decree was entered giving custody of their minor son to the father, a petition was filed by the mother to modify the decree and give her custody. In Wade v. Wade, 345 Ill. App. 170, 102 N.E. 2d 356, the court held that: "A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards unless on altered conditions since the decree, or on material facts existing at the time of the decree but unknown to the court, and then only for the welfare of the child. Citing Thomas v. Thomas, 233 Ill. App. 488; Maupin v. Maupin, 339 Ill. App. 484, 90 N.E.2d 234; Liles v. Liles, 336 Ill. App. 159, 83 N.E.2d 35.

The defendant admits that she was pregnant as a result of intercourse with her present husband and wanted a divorce before the child was born. She also knew that the plaintiff would get custody and that he was going to live at the present address with his father, grandparents and uncle and in a mixed neighborhood. The court could have found in the decree

21

that the defendant was not a fit person to have custody of the child.

The fact that the defendant has now a good home and now is a good woman does not give her the right to have custody of her son unless the welfare of the child requires it. Wade v. Wade, 345 Ill. App. 170, 102 N.E. 2d 356. There is no evidence that the plaintiff is unfit to have custody. New conditions must arise to warrant the court changing its prior custody determination. Stafford v. Stafford, 299 Ill. 438, 132 N.E. 452.

At the present time the boy has his own bedroom. He was baptized a Catholic and goes to church every Sunday. He lives in an average working-class neighborhood. The defendant proposes to bring up the boy as a Catholic in the same home where she and her present husband are practicing the Protestant religion, and their daughter will be brought up as a Protestant.

There should be unusual or peculiar circumstances to justify taking the custody of a son from the innocent parent and awarding him to one who admits being guilty of adultery. There is little reason to suppose that one who before conviction cared so little for her child as to commit adultery, an offense condemned alike by moral law and the law of the land, will so soon after conviction be as well qualified to rear and train him as the spouse who is found innocent of fault or offense. Nor is it just or reasonable to further injure and humiliate the innocent party to a marriage who has lost his wife through the criminal intimacies of the erring spouse with her present husband by also taking from him his only child. The boy may later resent being brought up by a step-father who was the cause of breaking up his home. There must be the most impelling reason to modify the decree and the record does not justify this drastic change.